IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GEORGE ROBINSON,
#N52712,

        Plaintiff,

v.

WEXFORD HEALTHCARE SERVICES,
NURSE HARRIS, and
NURSE FISCUS,

        Defendants.

Case No. 21-cv-00344-SPM

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

    Plaintiff George Robinson, an inmate of the Illinois Department of Corrections who is currently incarcerated at Lawrence Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Robinson claims he was given the wrong medication which resulted in swelling of his eyes, blindness, and headaches. Robinson seeks monetary damages.

    Robinson's original Complaint was dismissed without prejudice for failure to state a claim. (Doc. 14). He was granted leave to amend and the First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE FIRST AMENDED COMPLAINT

Robinson alleges that on September 26, 2019, he was given the wrong medication by Nurse Harris. (Doc. 15, p. 6). He was supposed to receive Tramadol and instead was dispensed another inmate's Neurontin. When Nurse Harris realized her error, she called Nurse Fiscus to come to the unit and take Robinson's vitals. According to Fiscus, Robinson's vitals were normal. Robinson told Fiscus that he was having "pain/discomfort in [his] head area." (*Id.*). He also reported being lightheaded, experiencing distorted vision, and having puffy eyes to both nurses. (*Id.* at p. 7, 10). The nurses did not provide further medical care to Robinson or request for him to be seen by a doctor.

Four hours later, Robinson woke up in excruciating pain and with loss of vision. (Doc. 15, p. 7). He immediately reported his symptoms to a correctional officer. The officer called the health care unit, but neither Harris nor Fiscus had documented the administration of wrong medication in Robinson's medical chart. Because the incident had not been recorded, medical staff told the officer to have Robinson "just sleep it off" and that his "vision would reappear after sleep." (*Id.*).

Robinson wrote two medical request slips and an emergency grievance complaining of loss of vision and excruciating head pain. (Doc. 15, p. 7-8). On October 1, 2019, during a "psyc-issues/visit," Robinson told a staff member about being administered the wrong medication, his head pain, and his loss of vision. (*Id.* at p. 8). Robinson was taken to see Dr. Pittman, who placed him on a toxin flush through an IV. The next day, Robinson had regained about 75% of his vision back and was discharged from the health care unit. (*Id.*).

On October 9, 2019, Robinson asked Harris why she had not written a report about the medication incident on September 26. (Doc. 15, p. 8). She responded that she did not write a report because his "vitals [were] okay."

DISCUSSION

Based on the allegations of the First Amended Complaint, the Court finds it convenient to designate the following count:

**Count 1:**   Eighth Amendment claim against Harris for dispensing Robinson the wrong medication on September 26, 2019.

**Count 2:**   Eighth Amendment claim against Harris and Fiscus for failing to provide medical care to Robinson after he was given the wrong medication on September 26, 2019.

**Count 3:**   Eighth Amendment claim against Wexford Healthcare Services for failing to train nursing staff.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

The Eighth Amendment prohibits the deliberate indifference to a prisoner's "serious medical needs," as deliberate indifference "constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (internal quotations omitted). This indifference includes "intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment." *Id.* at 829. To successfully state an Eighth Amendment claim of deliberate indifference, a plaintiff must plead that the defendant knew of a serious risk of harm and consciously disregarded it. *See Giles v. Godinez,* 914 F. 3d 1040, 1049 (7th Cir. 2019).

## Count 1

Robinson claims that Harris acted with criminal recklessness because she did not follow

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (7th Cir. 2007).

protocol when passing out medication. She had an "unlawful custom" of not looking at each prisoner's identification card prior to dispensing the medications. (Doc. 15, p. 6, 13). Because she did not follow proper procedures, Robinson claims that Harris made a "conscious choice" to disregard his health, resulting in him being given the wrong medicine.

As stated in the Court's original merit review order, Robinson's allegations do not state or imply that Nurse Harrison "consciously ignored a risk of harm" to Robinson by administering the wrong medicine on a single occasion. (Doc. 14, p. 3) (quoting *Brown v. Cascadden,* No. 19-3511, 2022 WL 523083, at *1-2 (7th Cir. Feb. 22, 2022)). Even if Harris did not check Robinson's identification card prior to giving him the medication,"[o]ne isolated mistake does not allow a plausible inference of deliberate indifference." *Robbins v. Waupun Corr. Inst.,* 16-CV-1128, 2016 WL 5921822, at *3 (E.D. Wisc. Oct. 2016) (quoting *Morrison v. Utz,* No. 11-CV-4110, 2012 WL 293548, at *2 (C.D. Ill. Jan. 31, 2012)). *See also Richmond v. Dart,* No. 12 C 0954, 2012 WL 567245, at *2 (N.D. Ill. Feb. 17, 2012) (prisoner did not state a claim based on allegations that the nurse failed to confirm the medication in question was being taken by the right inmate resulting in a severe allergic reaction); *Ehrenberg v. Wis. Dep't of Corr.,* No. 10 C 1022, 2010 WL 5089484 (E.D. Wis. Dec. 7, 2010) (prisoner stated no constitutional claim based on allegations that he was given the wrong dosage of medicine); *Davis v. Baker,* No. 08 C 1310, 2010 WL 779502 (S.D. Ind. Feb. 26, 2010) (granting summary judgment to defendant on claim that defendant handed inmate wrong medication one time); *Kirkwood v. Sirin,* No. 06 C 0139, 2006 WL 587698 *3 (E.D. Wis. Mar. 9, 2006) (prisoner failed to state constitutional claim for being given wrong medication on one day); *Ingram v. Brewer,* 7-cv-00176, 2009 WL 464491, at *1-2 (E.D. Cal. Feb. 24, 2009) (prisoner failed to state a constitutional claim for being injected with the wrong medication despite telling the defendant and then becoming sick). Accordingly, Count 1 is dismissed without prejudice.

### Count 2

Count 2 will proceed against Fiscus and Harris. Robinson claims that after taking the Neurontin his eyes swelled, and he reported to both nurses that he was feeling lightheaded and experiencing distorted vision and head pain. Robinson disputes their claims that his vitals were normal and alleges that Harris's failure to record the incident in his medical file in an attempt to conceal her error resulted in delayed care. These allegations are sufficient to survive preliminary review, and Count 2 will proceed against Harris and Fiscus. *See Goodloe v. Sood,* 947 F.3d 1026, 1031 (7th Cir. 2020) (an "inexplicable delay" in responding to an inmate's serious medical condition can reflect deliberate indifference).

### Count 3

Robinson claims that Wexford has a responsibility to train the nurses it employs. He asserts that the conduct by Fiscus and Harris on September 26, 2019, is evidence that they were not properly trained consistent with health care policy and procedures. But Robinson does not provide any factual allegations for why or how the training was inadequate. *See Harper v. Wexford Health, Sources Inc.*, 2017 WL 2672299, at *3 (N.D. Ill. June 21, 2017). Instead, Robinson makes a conclusory allegation against Wexford and fails to demonstrate the allegedly deficient healthcare was more than a random event. *See Arita v. Wexford Health Sources, Inc.*, 2016 WL 6432578, at *3 (N.D. Ill. Oct. 31, 2016). *See also Johnson v. Dossey,* 515 F.3d 778, 782 (7th Cir. 2008) ("a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights"). Thus, Count 3 is dismissed without prejudice.

### DISPOSITION

For the reasons stated above, the First Amended Complaint survives preliminary review pursuant to Section 1915A. **COUNTS 1** and **3** are **DISMISSED without prejudice. COUNT 2** will proceed against Harris and Fiscus. Because there is no surviving claim against Wexford

Healthcare Services, Wexford is **DISMISSED without prejudice** as a party to this case.

As Robinson's claims involve his medical care, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk shall prepare for Harris and Fiscus the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to Defendants' place of employment as identified by Robinson. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant cannot be found at the work address provided by Robinson, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merit Review Order.**

Robinson is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days

after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 7, 2022**

        *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.