IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GEORGE ROBINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:21-CV-344-MAB |
| | ) |
| JUANITA HARRIS and | ) |
| ALLYSON FISCUS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on the Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendants Juanita Harris and Allyson Fiscus (Doc. 36; *see also* Doc. 37). For the reasons explained below, the motion is granted.

### BACKGROUND

Plaintiff George Robinson filed this pro se lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated at Lawrence Correctional Center by Defendants, who are both nurses at the facility (Docs. 15, 16). Plaintiff alleged that Nurse Harris gave him the wrong medication on September 26, 2019 (Doc. 16). Once Nurse Harris realized her mistake, she called Nurse Fiscus to come to the unit and take Plaintiff's vital signs, which Fiscus allegedly determined were normal (*Id.*). Plaintiff alleged that he reported to both Nurse Harris and Nurse Fiscus that he was feeling

lightheaded and experiencing distorted vision and head pain, but they did not provide him any care for these complaints or request for him to be seen by a doctor (*Id.*). Plaintiff further alleged that four hours later, he woke up in excruciating pain with loss of vision (*Id.*). He immediately reported his symptoms to a correctional officer, who then called the health care unit (*Id.*). But because neither Harris nor Fiscus had documented the administration of an incorrect medication in Plaintiff's medical char, medical staff simply told the officer to have Plaintiff "just sleep it off" and that his "vision would reappear after sleep" (*Id.*). Plaintiff alleged that he wrote two medical slips and an emergency grievance but was not provided with any medical care until after he told a staff member on October 1, 2019 during a "psyc-issues/visit" about being administered the wrong medication, his head pain, and his loss of vision (*Id.*). According to Plaintiff, he was then taken to see the doctor, who admitted him to the infirmary and placed him on an IV to flush toxins from his body (*Id.*).

The Court conducted a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A and determined that Plaintiff could not proceed on a claim against Nurse Harris for allegedly dispensing him the wrong medication because one isolated mistake does not allow a plausible inference of deliberate indifference (Doc. 16, p. 4). However, the Court allowed Plaintiff to proceed on a claim for deliberate indifference against both nurses based on his allegations that he reported symptoms to them but they failed to provide him with any care and that their failure to record the incident in his medical chart resulted in delayed care (Doc. 16, p. 5).

Defendants filed their motion for summary judgment on the issue of exhaustion

on November 14, 2022 (Doc. 36; *see also* Doc. 37). They submitted Plaintiff's grievance records from the ARB and Lawrence, which demonstrated there were four relevant grievances (Doc. 37-1, Doc. 37-2). Defendants argued that the first and fourth grievances did not sufficiently grieve their conduct that forms the basis of Plaintiff's deliberate indifference claim (Doc. 37). Defendants argued that the second and third grievances were not fully exhausted (Doc. 37). Plaintiff filed a response in opposition to Defendants' motion for summary judgment, in which he only argued that his claims were exhausted by the first grievance at issue (Doc. 39). The Court reviewed both parties' briefs and determined there are no issues of fact and a hearing is not necessary.

## LEGAL STANDARD

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). While courts generally cannot resolve factual disputes on a motion for summary judgment, *e.g., Tolan v. Cotton*, 572 U.S. 650, 656 (2014), when the motion pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)); *accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). However, where there are no material factual disputes, an evidentiary hearing is not

necessary. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009) (no hearing required where there are "no disputed facts regarding exhaustion, only a legal question").

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Failure to do so means failure to exhaust. *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code to exhaust his claims. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). The first step in the normal grievance process requires the inmate to submit a grievance to their counselor within 60 days of the incident, occurrence, or problem. *Id.* at § 504.810(a).[1] It is understood that after the counselor responds, the grievance goes to the grievance officer. *See id.* at § 504.820 ("The Chief Administrative Officer shall appoint two or more employees who may serve as a Grievance Officer to attempt to resolve problems, complaints and grievances that offenders have been unable

---

[1] There are exceptions to this rule, none of which apply here. *See* 20 ILL. ADMIN. CODE § 504.810(a) (outlining instances in which grievance should be submitted directly to the grievance officer); *id.* at § 504.870 (outlining instances in which the grievance should be submitted directly to the ARB).

to resolve through routine channels."); *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020) ("an inmate begins the [grievance] process by submitting a written grievance to his institutional counselor within 60 days of the incident or problem in question. . . . The counselor then refers the matter to the institution's grievance office, and a grievance officer 'shall consider the grievance' . . . ."). The grievance officer is to consider the grievance and tender a written report of their findings and recommendations to the warden "within two months after receipt of the written grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). The warden then reviews the recommendation and provides the inmate with a written decision on the grievance. *Id.*

Alternatively, an inmate may request that a grievance be handled as an emergency, in which case they submit the grievance directly to the warden. *Id.* at § 504.840. If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is processed on an expedited basis. *Id.* On the other hand, if the warden determines that the grievance does not involve an emergency, the inmate is notified in writing that he or she may resubmit the grievance through the normal grievance process. *Id.*

Regardless of whether the grievance was processed in the normal manner or as an emergency, if the inmate is unsatisfied with the warden's decision, he or she has thirty days from the date of the warden's decision to appeal to the Administrative Review Board ("ARB"). 20 ILL. ADMIN. CODE § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director of the IDOC, who then makes a final

decision "within six months . . . when reasonably feasible under the circumstances.". *Id.* at § 504.850(d), (e).

### FINDINGS OF FACT & ANALYSIS

There are four relevant grievances:

1. Emergency grievance #9-19-595, dated September 26, 2019
2. Grievance #10-19-307, dated October 11, 2019
3. Grievance #10-19-459, dated October 21, 2019
4. Emergency grievance #4-20-145, dated April 7, 2020

**A. Emergency grievance #9-19-595, dated September 26, 2019**

The first grievance is an emergency grievance dated September 26, 2019 (#9-19-595) (Doc. 37-1, pp. 93-99). In this grievance, Plaintiff stated that Nurse Harris gave him the wrong medication on September 26th, and then after realizing her mistake, "she had a different nurse take my vitals. My vitals were ok." Plaintiff went on to say that approximately four hours later, he had a bad headache, and his vision was so blurred that he could not see. He told the sergeant, who called health care and was told to tell Plaintiff to sleep it off. Plaintiff stated in the grievance that his vision had not returned yet, and he would like to be seen by a doctor.

There is no dispute that this grievance was fully exhausted, however, Defendants contend that it is nevertheless insufficient to exhaust Plaintiff's claims against them (Doc. 37, pp. 12–13). Defendants point out that the grievance only says that Nurse Harris gave Plaintiff the wrong medication and then summoned another nurse to evaluate him, who determined that his vital signs were "ok" (*Id.*). Defendants argue that Plaintiff never stated he reported symptoms to either nurse or that they failed to provide him with any

care (*Id.*). Therefore, according to Defendants, "[a]s written, this grievance would not put Lawrence on notice that [Nurse] Fiscus nor [Nurse] Harris disregarded his complaints on September 26, 2019 or provided him inappropriate medical treatment after the alleged medication administration in any way." (*Id.*).

The Court agrees with Defendants. The grievance does not complain about anything Nurse Harris did aside from giving Plaintiff the wrong medication, but that is not the basis for his claim against her. It also does complain about anything Nurse Fiscus did or indicate that she did something wrong. The administrative regulations require a prisoner's grievance to "contain factual details regarding each aspect of the offender's complaint," and also name, or at least describe, "each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(b). In other words, the grievance must provide sufficient information to identify the defendant as the target of the complaint or to implicate them in the alleged wrongdoing. *See Roberts v. Neal*, 745 F.3d 232, 235–36 (7th Cir. 2014) (explaining "fatal defect" in grievance was "the absence of anything in it to indicate that [the defendant] was the target."); *see also Ward v. Hoffman*, 670 Fed. Appx. 408, 409, 410 (7th Cir. 2016) (affirming prisoner failed to exhaust his administrative remedies as to his excessive force claim where his grievance complained only about the procedures used by the adjustment committee in a disciplinary hearing but did not mention the defendant nor the excessive force purportedly used by the defendant during the incident that gave rise to the ticket); *Ambrose v. Godinez*, 510 Fed. Appx. 470, 472 (7th Cir. 2013) (affirming the trial court properly narrowed the case to include only the misconduct the plaintiff had complained about in a grievance and

dismissed the misconduct the plaintiff did not grieve). There is simply nothing in the grievance suggests that the target of Plaintiff's complaint was Nurse Harris and Nurse Ficus's conduct in purportedly ignoring his complaints and/or refusing to provide him with any treatment.

Consequently, the first grievance is insufficient to exhaust Plaintiff's claims against Nurse Harris and Nurse Fiscus in this case.

**B. Grievance #10-19-307, dated October 11, 2019 and Grievance #10-19-459, dated October 21, 2019**

The second grievance at issue is grievance #10-19-307, dated October 11, 2019 (Doc. 37-1, pp. 86–89). In this grievance, Plaintiff stated in pertinent part that Nurse Harris gave him the wrong medication, and after she realized the mistake, she called over to health care, and Nurse Fiscus came to evaluate him (Doc. 37-1, pp. 86–89). Plaintiff said he told Nurse Fiscus that he had a headache and felt lightheaded, and that Fiscus checked his vital signs and "they check[ed] out." He further claimed that neither Harris nor Fiscus wrote a report stating that he had been given the wrong medication, and as a result he did not receive medical treatment in a timely manner.

Plaintiff's counselor received the grievance on October 15, 2019 but did not respond immediately (Doc. 37-1, p. 87). Plaintiff then filed a third grievance, #10-19-459, on October 21, 2019 (*Id.* at pp. 83–85). In this grievance, Plaintiff stated that he was given the wrong medication on September 26th, and as a result, he lost his vision for five days and has been suffering from migraines ever since. He said that he had been putting in sick call requests to see a doctor for his migraines "since 10-8-19," and when he was called

to the healthcare unit, he was seen by a nurse, not a doctor. He stated that he had only seen a doctor once about his complaints and wanted to see a doctor again.

The counselor received the third grievance on October 22, 2019 (Doc. 37-1, p. 84). The counselor responded to the second and third grievances on January 2, 2020 (*Id.* at pp. 84, 87). The grievances were returned to Plaintiff with the counselor's response on January 6th (Doc. 37-5, p. 1). The ARB then received the grievances on January 28th and responded the following day by returning them to Plaintiff without addressing them because they did not include a response from the grievance officer and warden (Doc. 37-1, pp. 83, 86). According to records from Lawrence, the grievance officer then received both the second and third grievances on March 3, 2020, for second level review (Doc. 37-5, p. 1; Doc. 37-6, p. 22; *see also* Doc. 37-2, pp. 28, 38). The grievance officer reviewed them on April 6th, and said they were untimely because the grievances were "at 1st level on 1/2/20 and not turned into the grievance office for 2nd level review until March 3, 2020," which was 61 days later (Doc. 37-2, p. 38; *see also id.* at p. 28). The warden concurred and denied both grievances on April 8, 2020 (*Id.* at pp. 28, 38). The grievances were returned to Plaintiff that same day (Doc. 37-5, p. 1). There is no indication that Plaintiff appealed the grievances to the ARB (*see* Doc. 37-1).

Defendants argue that Plaintiff did not follow the proper procedures with respect to these two grievances (Doc. 37, pp. 13–15). First, Defendants assert that Plaintiff did not timely submit these grievances to the grievance officer for second level review (*Id.* at p. 15). Second, Plaintiff did not appeal these grievances to the ARB after receiving the grievance officer and warden's responses (*Id.*). Therefore, according to Defendants,

Plaintiff's failure to follow all of the rules means that these grievances cannot serve to exhaust his administrative remedies as to the claims in this case (*Id.*).

With regard to the second grievance, Defendants did not dispute that the content of this grievance sufficiently covers Plaintiff's claims against them (*see* Doc. 37, pp. 13–15), and the Court finds that it does. Therefore, the only question is whether this grievance was fully exhausted. The Court agrees with Defendants that it was not. Specifically, there is no evidence that Plaintiff appealed the grievance to the ARB after it was denied by the warden. Plaintiff did not address this issue in his brief or make any suggestion, for example, that he submitted the grievance to the ARB but it went missing or that he was otherwise thwarted from submitting it to the ARB (*see* Doc. 39). That means Plaintiff failed to complete each step of the grievance process with respect to the second grievance and therefore this grievance was not fully exhausted.[2]

The same goes for the third grievance—Plaintiff's failure to appeal to the ARB after the grievance was denied by the warden means that this grievance was not fully

---

[2] The Court declines to reach any conclusion as to whether Plaintiff's submission of the second or third grievance to the grievance officer was timely because the briefing does not sufficiently address the issue. Defendants argue that "Plaintiff did not timely appeal these grievances to the grievance officer for second level review as outlined by the grievance procedures at Lawrence" (Doc. 37, p. 15). But Defendants do not explain what Plaintiff's deadline was for submitting the grievances to the grievance officer, nor do they cite to any authority that sets forth the relevant deadline (*see id.* at pp. 13–15). Rather, Defendants seemed to adopt the grievance officer's stance that Plaintiff's submissions were untimely, which was apparently based on the fact that the grievance officer did not receive the grievances until more than 60 days after the counselor had responded (*see id.*; Doc. 37-2, pp. 28, 38). The Court is unsure whether the Illinois Administrative Code can be read in such a way as to support Defendants' argument. *See* 20 ILL. ADMIN. CODE §§ 504.810–504.870. The Code says that an inmate must submit their grievance for first level review (in this instance to the counselor) within 60 days of the incident. *Id.* at § 504.810(a). It does not say anything about how the grievance should be submitted to the grievance officer for second level review or the timeframe in which it must be done. While the Court understands there must be a limit on the time a prisoner has to submit their grievance to the grievance officer for second level review, the briefing did not sufficiently develop the argument on the issue and therefore the Court is unable to address it.

exhausted. Even if that were not the case, this grievance still could not be used to exhaust Plaintiff's claims in this case because it does not contain any reference to either nurse by name, title, description, or any other identifiers. Nor does it contain any complaints about their conduct on September 26, 2019, after he was given the wrong medication. Rather, Plaintiff complained only about not being seen by a doctor between October 8th and October 21st. Nothing Nurse Harris and Nurse Fiscus did on September 26th was the target of the October 21st grievance and it did nothing to put Lawrence officials on notice that the nurses purportedly disregarded his complaints or provided him inappropriate medical treatment that day after he was allegedly issued the wrong medication.

Consequently, neither the second nor the third grievances can be used to exhaust Plaintiff's claims against Nurse Harris and Nurse Fiscus in this case.

**C.  Emergency Grievance #4-20-145, dated April 7, 2020**

The fourth and final grievance at issue is emergency grievance #4-20-145, dated April 7, 2020 (Doc. 37-1, pp. 69–72). In this grievance, Plaintiff stated that he had been having migraines since he was given the wrong medication on [September] 26, 2019." He further said that the pain medication he was on was not working, and he had been putting in sick call requests for "the last month and a half" but had not been seen by anyone. The warden received the grievance on April 10th and deemed it an emergency. The grievance officer then received the grievance on April 14th and reviewed it two days later. The grievance officer's response indicated that, according to the healthcare unit administrator, Plaintiff was taken to the emergency room on April 12th and his medications were renewed the following day. The grievance officer recommended that

the grievance be deemed "partially moot" because Plaintiff was seen at the emergency room and his medications were renewed, and "partially unable to substantiate as there is no information provided regarding offender's medical issue prior to the date of 4/12/20." The warden concurred with the recommendation and denied the grievance on April 17, 2020. Plaintiff appealed to the ARB, where his grievance was received on April 27, 2020. The ARB returned the grievance to Plaintiff without addressing it because it was "[n]ot submitted in the timeframe outlined in Department Rule 504."

Defendants argue that this grievance cannot serve to exhaust Plaintiff's claims against Nurse Harris and Nurse Fiscus because he did not name or describe them in the grievance nor did he complain about their alleged failure to provide him with adequate medical treatment (Doc. 37, p. 15). The Court agrees. Plaintiff complained in this grievance only about his sick call requests in the spring of 2020 going unanswered. Nurse Harris and Nurse Fiscus were plainly not the target of this grievance, and it did nothing to put Lawrence officials on notice that the nurses purportedly provided Plaintiff with inappropriate medical treatment over six months prior. Consequently, the fourth grievance is insufficient to exhaust Plaintiff's claims against Nurse Harris and Nurse Fiscus in this case.

## Conclusion

Because none of the four grievances at issue can serve to exhaust Plaintiff's claims in this case against Defendants Harris and Fiscus, their motion for summary judgment on the issue of exhaustion (Doc. 36) is **GRANTED.** This case is **DISMISSED without**

**prejudice** for failure to exhaust. The Clerk of Court is **DIRECTED** to enter judgment and close this case on the Court's docket.

    **IT IS SO ORDERED.**

    **DATED: June 26, 2023**

                                                                                   **s/ Mark A. Beatty**
                                                                                 **MARK A. BEATTY**
                                                                                 **United States Magistrate Judge**